**UNITED STATES of America, Plaintiff,**

v.

**Talmadge E. KOLLER and Pamela K. Penn, Defendants.**

**Nos. LR–CR–83–5–(1), LR–CR–83–5–(2).**

United States District Court,
E.D. Arkansas, W.D.

March 25, 1983.

George Proctor, U.S. Atty. by Terry L. Derden, Asst. U.S. Atty., Little Rock, Ark., for plaintiff.

William R. Wilson, Jr., William C. McArthur, Little Rock, Ark., for defendants.

## MEMORANDUM OPINION

GEORGE HOWARD, Jr., District Judge.

A hearing was held on March 21, 1983, on defendants' motions to suppress evidence which they allege was seized during an illegal search of their house based upon an expired search warrant.

At 5:25 p.m. on September 17, 1982, after observing a controlled buy of marijuana and questioning a participant of that buy, Marcia Finne, state and city officers went to defendants' home at 8424 Herrick Lane in Little Rock, Arkansas, to advise of Finne's arrest, of marijuana being seen at defendants' house, and of their desire to search the house. The defendants invited the officers into their kitchen, said they would not consent to a search, and told the officers a search warrant would have to be obtained. This information was relayed to Officer Williams at the Little Rock Police Department who prepared an affidavit for a search warrant. The officers were not asked to leave defendants' home and they remained there while defendants called their attorney and had dinner. Their attorney, Don Bassett, Esq., arrived at their house about 7:00 p.m. and was advised that a search warrant was being sought. Officer Williams went to Circuit Judge John Langston's home and obtained his signature on the search warrant at 7:55 p.m. Although there is some dispute as to whether Williams used his radio or the telephone, all the witnesses agree that Williams notified the officers at defendants' house at 7:56 p.m. that the search warrant had been signed and that Officer Sanders advised defendants and Bassett that the warrant had been signed and the search could begin. Bassett informed the officers that he wanted to see the warrant before he would let them search the house. At approximately 8:10 p.m., Williams arrived with the warrant and gave it to Bassett. There is con-

flicting testimony as to whether the officers had proceeded with the search and seized any evidence prior to Bassett telling the officers there could be no search or to stop the search since the warrant had expired at 8:00 p.m.

■ Since city and state officers were involved in the stake-out, controlled buy, the preparation of the affidavit and warrant, and the search and the search warrant was signed by a state judicial officer, this Court finds that there was not significant federal involvement in the search and that Arkansas law regarding the search warrant and its execution must be used in determining the validity of the search. *United States v. McCain,* 677 F.2d 657 (8th Cir. 1982).

Arkansas Criminal Procedure Rule 13.2(c) provides:

> Except as hereafter provided, the search warrant shall provide that it be executed between the hours of six a.m. and eight p.m., and within a reasonable time, not to exceed sixty (60) days. Upon a finding by the issuing judicial officer of reasonable cause to believe that:
>
> (i) the place to be searched is difficult of speedy access; or
>
> (ii) the objects to be seized are in danger of imminent removal; or
>
> (iii) the warrant can only be safely or successfully executed at nighttime or under circumstances the occurrence of which is difficult to predict with accuracy;
>
> the issuing judicial officer may, by appropriate provision in the warrant, authorize its execution at any time, day or night, and within a reasonable time not to exceed sixty (60) days from the date of issuance.

Arkansas Criminal Procedure Rule 16.2(e) provides:

> ... A motion to suppress evidence shall be granted only if the court finds

that the violation upon which it is based was substantial, or if otherwise required by the Constitution of the United States or of this state. In determining whether a violation is substantial the court shall consider all the circumstances, including:

> (i) the importance of the particular interest violated;
>
> (ii) the extent of deviation from lawful conduct;
>
> (iii) the extent to which the violation was willful;
>
> (iv) the extent to which privacy was invaded;
>
> (v) the extent to which exclusion will tend to prevent violations of these rules;
>
> (vi) whether, but for the violation, the things seized would have been discovered; and
>
> (vii) the extent to which the violation prejudiced the moving party's ability to support his motion, or to defend himself in the proceedings in which the things seized are sought to be offered in evidence against him.

■ There is no dispute that the search warrant provided that it was to be executed between 6:00 a.m. and 8:00 p.m., that it contained no findings of reasonable cause to authorize a nighttime search, and that it was not physically present at the defendants' house until Officer Williams arrived with the signed warrant at 8:10 p.m.

Although the government has advanced several theories [1] to validate the search, this Court finds that the opinion of *Brothers v. State,* 261 Ark. 65, 546 S.W.2d 715 (1977), authored by United States District Judge Elsijane Roy when she was an Associate Justice on the Arkansas Supreme Court, to be controlling. In *Brothers,* the appellant claimed the warrant was deficient since Rule 13.2(c) required execution of the warrant between the hours of 6:00 a.m. and 8:00 p.m. unless special circumstances were

---

1. While this Court is persuaded that there is merit to the government's argument that the search warrant was executed at 7:56 p.m. when the officers notified defendants and their attorney that the warrant had been signed and that they wanted to begin the search, this Court prefers not to predict how the Arkansas courts would rule on this same issue when it is not necessary to the resolution of the motion.

shown and none were shown in the warrant. The Arkansas Supreme Court held at pp. 67–68, 564 S.W.2d 715:

> The record reflects the search was started about 8 p.m. and completed as soon thereafter as possible. We do not find this to be a material violation of Rule 13.2(c) when viewed in the light of Rule 16.2(e).
>
> . . . .
>
> In this particular case the failure to strictly comply with Rule 13.2(c) was not willful, no additional invasion of privacy occurred, and appellant suffered no prejudice. Therefore, suppression was not warranted.

This Court finds the following factors to be relevant: the officers observed Finne leaving defendants' house at 4:30 p.m. with a suitcase that contained marijuana bought in a controlled buy; after Finne was arrested and questioned, the officers arrived at defendants' house at 5:25 p.m. to obtain a consensual search; the officers were allowed into the kitchen and were told by defendants that a warrant would have to be obtained; while Officer Williams was obtaining the warrant, the officers remained in the kitchen; defendants called their attorney who arrived at their house at 7:00 p.m.; the warrant was signed at 7:55 p.m. and that information was conveyed to the officers at defendants' house at 7:56 p.m. who immediately advised defendants and the attorney that the warrant had been obtained; at the request of counsel, the officers refrained from searching the interior of the house until the search warrant itself arrived; when Williams arrived with the warrant at 8:10 p.m., the warrant was presented to the attorney; and the officers proceeded with the search although the attorney voiced objections that it was after 8:00 p.m.

Any failure to strictly comply with Rule 13.2(c) did not violate the policy of prohibiting unexpected searches in the middle of the night, was only a matter of minutes, and did not cause a surprise intrusion into defendants' privacy. There was no substantial violation of Rule 13.2(c), of federal policy, or the United States Constitution.

Since there is no question that all the evidence sought to be suppressed was seized after the search warrant was handed to defendants' attorney, the Court need not address the other theories argued by the government or defendants in support of their positions.

Accordingly, the Court finds that defendants' motions to suppress should be, and they are hereby, denied.