Cite as 2026 Ark. App. 30

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CR-24-814

|  |  |
|---|---|
| BILLY LEMON<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | Opinion Delivered January 21, 2026<br><br>APPEAL FROM THE CRAWFORD COUNTY CIRCUIT COURT<br>[NO. 17CR-23-525]<br><br>HONORABLE MARC MCCUNE, JUDGE<br><br>AFFIRMED |

**N. MARK KLAPPENBACH, Chief Judge**

Billy Lemon appeals his convictions for two counts of second-degree sexual assault and one count of rape. On appeal, Lemon argues that the circuit court abused its discretion in denying his motion to sever the charges and in admitting testimony under the pedophile exception. We affirm.

Lemon was accused of committing crimes against two minor children: second-degree sexual assault and rape against MC1 and second-degree sexual assault against MC2. The children are cousins and considered Lemon their uncle. Before trial, Lemon filed a motion to sever the offenses and hold separate trials for each victim. Lemon argued that he was entitled to severance because the alleged crimes were not part of the same incident or scheme. The circuit court denied the motion because it found that the testimony of each victim would be admissible in the other's trial under Arkansas Rule of Evidence 404(b). The circuit court

also found, over Lemon's objection, that the testimony of four other witnesses who alleged that Lemon had sexually assaulted them when they were minors was admissible under the pedophile exception.

At trial, MC1, then seventeen years old, testified that she disclosed her abuse after she ran away from home in July 2021. MC1 recounted that the first time Lemon abused her occurred when he told her to lie on a bed and color in a coloring book while he removed her underwear and touched her with his fingers. MC1 testified that when she was seven or eight years old, Lemon began making her put her hands or mouth on his penis while he moved her up and down. MC1 testified that this happened often, usually in Lemon's car. She testified about one occasion in Lemon's car at a car wash when he penetrated her with his fingers. MC1 testified that Lemon told her he would get in trouble if she told anyone. The last time Lemon attempted to molest MC1 was in August 2020 when she was fourteen years old. While they were in a car together, Lemon tried to touch her vagina, and MC1 pushed him away. MC1's mother testified that Lemon started spending time alone with MC1 when she was five or six years old.

MC2, who was fourteen years old at the time of trial, testified that the first time Lemon touched her was when he picked her up for lunch and took her to his house where they sat in his truck. Lemon touched her chest and thigh. After she protested, Lemon got out of his truck and masturbated. MC2 said that Lemon told her not to say anything or he would get in trouble, and she would be taken away from her family. MC2 testified that on another occasion, she was at Lemon's house playing with his daughter. When MC2 had to

2

use the bathroom, Lemon insisted she use the master bathroom. Lemon then walked in on her and carried her to the bedroom floor where he lay on top of her and touched his penis to her vagina. MC2's mother confirmed that Lemon had picked MC2 up for lunch in December 2020 and that she spent time at his house in the spring of 2021.

Two of Lemon's former victims ("FVs") who are sisters testified that when they were about seven and thirteen years old, their mother was friends with Lemon's wife. FV1 and FV2 said that they rode in a truck with Lemon through a field to go see fireworks. Lemon's wife and the sisters' parents rode in the cab of the truck, while Lemon, the sisters, and their brother rode in the truck bed. FV1 testified that Lemon asked her to sit on his lap and then put his hand up her dress and rubbed her underwear. After FV1 got up to stand by her siblings, Lemon stood up by FV2. She testified that Lemon tried to slip his hand into her shorts at her hip. FV2 pushed Lemon away and yelled for her parents to stop the truck.

Another witness, FV3, testified that Lemon assaulted her when she was spending time at the home of Lemon's sister, whom she considered an aunt. FV3 said that when she was between twelve and fourteen years old, Lemon trapped her in the bathroom and penetrated her with his fingers. She said that on another occasion, he did the same thing in a bedroom. Lemon's niece, FV4, testified that in 2014, when she was nine years old, she and her mother stayed at Lemon's home while visiting Arkansas for the holidays. FV4 said that she was left alone with Lemon at one point, and he raped her on his bathroom floor. Lemon was found guilty of all charges against MC1 and MC2 and sentenced to sixty years' imprisonment.

Whenever two or more offenses have been joined for trial solely on the ground that they are of the same or similar character and they are not part of a single scheme or plan, the defendant shall have a right to a severance of the offenses. Ark. R. Crim. P. 22.2(a). The supreme court, however, has consistently allowed an exception to Rule 22.2 in cases involving sexual abuse of children and evidence admissible under Arkansas Rule of Evidence 404(b). *See Parish v. State*, 357 Ark. 260, 163 S.W.3d 843 (2004); *Dillard v. State*, 333 Ark. 418, 971 S.W.2d 764 (1998); *Richardson v. State*, 314 Ark. 512, 863 S.W.2d 572 (1993). Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." When the charge concerns the sexual abuse of children, the supreme court has held that evidence of sexual abuse with children other than the victim is admissible to show motive, intent, or plan pursuant to Rule 404(b). *Parish, supra.*

Additionally, the pedophile exception allows the State to introduce evidence of a defendant's similar acts with the same or other children when it is helpful in showing a proclivity for a specific act with the person or class of persons with whom the defendant has an intimate relationship. *Hortenberry v. State*, 2017 Ark. 261, 526 S.W.3d 840. The rationale for this exception is that this evidence helps to prove the depraved sexual instinct of the accused. *Id.* There are two requirements for this exception to apply: (1) a sufficient degree of similarity between the evidence to be introduced and the charged sexual conduct and (2)

4

evidence of an "intimate relationship" between the defendant and the victim of the prior act. *Id.*

Lemon argues that the circuit court abused its discretion in denying his motion to sever because the charged crimes (1) are not close in time, (2) do not involve the same child or children in the same household, and (3) do not show the same type of "depraved sexual instinct" as evidenced in other cases. We disagree. First, in looking at the time interval between the crimes, MC1 testified that Lemon began abusing her as far back as 2014 and that he last attempted to engage in sexual contact with her in August 2020. MC2 testified that Lemon molested her in December 2020 and the spring of 2021. In *Parish*, *supra*, we held that the molestation of one victim that occurred over several years until 1999 or 2000 was not too remote from the abuse of another victim that occurred in 2002. The similar time interval here, therefore, is not too long. While MC1 and MC2 did not live in Lemon's household, the misnomer "intimate relationship" does not require that the child live in the home of the accused. *Parish*, *supra*. We have allowed testimony under the pedophile exception where children were left in the care of the defendant. *See Brewer v. State*, 68 Ark. App. 216, 6 S.W.3d 124 (1999). Here, both girls considered Lemon their uncle and spent time alone with him in his care. Lemon sought out the girls when no one else was around, trapped them in his car or bathroom, and assaulted them. The acts testified to were sufficiently similar and exhibited a depraved sexual tendency toward girls seven to eleven years old. Accordingly, the factors establishing relevancy under the pedophile exception are

satisfied. Because each victim's testimony would be admissible in the trial of the other, Lemon was not entitled to severance. *See Parish*, *supra*.

Lemon additionally argues that MC1 and MC2 did not testify at the Rule 404(b) hearing to determine whether the pedophile exception would apply to their testimony and that even if the exception did apply, their mothers would not have testified in each other's trials. These arguments were not preserved below, and Lemon cites no authority to support them on appeal. Lemon also argues that intent was not a necessary element to prove; however, he does not address the other rule-based exceptions to Rule 404(b) or the purpose of the pedophile exception. We affirm the denial of his motion to sever.

For his second point on appeal, Lemon argues that the court abused its discretion in permitting FV1 and FV2 to testify pursuant to the pedophile exception because there was no intimate relationship between them. We agree with the State, however, that even if their testimony did not meet the requirements of the pedophile exception, any error was harmless. Even when a circuit court errs in admitting evidence, we may declare the error harmless and affirm when the evidence of guilt is overwhelming and the error is slight. *Kelley v. State*, 2009 Ark. 389, 327 S.W.3d 373. To determine if the error is slight, we can look to see if the defendant was prejudiced. *Id.* Here, MC1 and MC2 offered very detailed testimony of rapes and sexual assaults committed by Lemon. Additionally, FV3 and FV4 testified under the pedophile exception that Lemon raped them in manners and locations similar to those described by MC1 and MC2. The testimony of FV1 and FV2 described a single incident with Lemon where he touched and attempted to touch them in the presence of others. We

hold that the evidence of guilt is overwhelming, and any error in admitting the evidence offered by FV1 and FV2 that Lemon touched them in the truck is slight. Accordingly, we affirm.

Affirmed.

VIRDEN and MURPHY, JJ., agree.

*Jeremy D. Wann*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Dalton Cook*, Ass't Att'y Gen., for appellee.